**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **BRICKSTRUCTURES, INC.** | |
| Plaintiff, | Case No.: _____ |
| **v.** | |
| **COASTER DYNAMIX, INC.** | **JURY TRIAL DEMANDED** |
| Defendant. | |

**COMPLAINT**

Plaintiff Brickstructures, Inc. ("Plaintiff" or "Brickstructures"), by its attorneys, as and for its Complaint against Defendant Coaster Dynamix, Inc. ("Defendant" or "Coaster Dynamix") alleges as follows:

**NATURE OF THE CASE**

1.      This is a civil action for breach of contract and breach of fiduciary duty under Illinois law and false advertising under the Lanham Act, 15 U.S.C. § 1051 *et seq*.

**THE PARTIES**

2.      Brickstructures, Inc. is an Illinois Corporation having its principal place of business at 414 E. Thomas St., Arlington Heights, IL 60004.

3.      On information and belief, Defendant Coaster Dynamix, Inc. is a Virginia corporation having its principal place of business at 180 Shen Elk Plaza, Elkton, VA 22827.

4.      On information and belief, Defendant has conducted and regularly conducts business within this District, has purposefully availed itself of the privileges of conducting business in this District, and has sought the protections and benefits of the laws of the State of Illinois.

## JURISDICTION AND VENUE

5.     This Court has original subject matter jurisdiction over Plaintiff's claims under 28

U.S.C. § 1332 (diversity) because:

   a.  Plaintiff Brickstructures is a citizen of the State of Illinois;

   b.  On information and belief, Defendant Coaster Dynamix is a citizen of the State of

       Virginia; and

   c.  The amount in controversy exceeds $75,000.

6.     This Court additionally has original subject matter jurisdiction over Plaintiff's

Lanham Act claims, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331.  This Court has

supplemental jurisdiction over Plaintiff's common law claims under 28 U.S.C. § 1367.

7.     This Court has personal jurisdiction over Defendant because, on information and

belief, Defendant is conducting substantial business in this State, and this District, including

offering for sale, selling, and distributing its products in this judicial District.  On information

and belief, Defendant, either directly or through subsidiaries or intermediaries (including

distributors, retailers, and others), conducts its business extensively throughout Illinois, by

making, shipping, distributing, offering for sale, selling, and advertising its products and/or

services in the State of Illinois and this District.

8.     On information and belief, Defendant specifically targets the consumers of

Illinois and this District through various means, including by attending trade shows in this

District such as, for example, the 2009 International Hobby Expo, which was held in Chicago,

Illinois.

9.     Defendant has purposefully established minimum contacts with this State and this

District and has purposefully availed itself of the benefits of this State and this District by

2

intentionally targeting Illinois consumers for the sale of its products, and, on information and belief, has made substantial sales of its products to customers in Illinois.

10.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred within this District, and because Defendant does business in this District, including but not limited to making, shipping, distributing, offering for sale, selling, and advertising its products and/or services in this District.

## FACTUAL BACKGROUND

### Adam Reed Tucker and Brickstructures, Inc.

11.    Adam Reed Tucker has long had a passion for LEGO®.  His background in architecture and design has given him the tools to pursue that passion professionally.  Because of his skills, has become highly regarded as a "master builder" of LEGO designs.  In fact, Mr. Tucker is a LEGO® Certified Professional, one of only thirteen worldwide.  *See* Exhibit A, LEGO® Certified Professionals, available at https://wwwsecure.lego.com/en-us/aboutus/lego-group/programs-and-visits/lego-certified-professionals.

12.    Mr. Tucker has been instrumental in many projects relating to LEGO.  For example, in 2007, he co-founded Chicago's first LEGO fan convention, Brickworld.  Since then, Brickworld has expanded to hold events annually in Chicago, Indianapolis, Tampa, and Fort Wayne, IN.

13.    Mr. Tucker's works have also been featured in many exhibitions.  For example, most recently in 2016, the Museum of Science and Industry in Chicago held the Brick by Brick exhibit, which featured several LEGO structures designed and constructed by Mr. Tucker.  *See* Exhibit B, Brick by Brick press release, available at

https://www.msichicago.org/fileadmin/assets/press/brick_by_brick_press_kit/BxB_General_Rele
ase.pdf.

14.     In furtherance of his career and passion for LEGO, Mr. Tucker founded

Brickstructures, Inc., a firm dedicated to LEGO®-related projects, in 2007.   Shortly thereafter,

Brickstructures partnered with The LEGO Group (hereinafter "TLG") to launch the "LEGO

Architecture" line of products, which have become well-known and are beloved by LEGO

enthusiasts.  *See* Exhibit C, History of Lego Architecture, available at https://www.lego.com/en-

us/architecture/explore/architecture-history.

15.     Although LEGO Architecture was Brickstructures' initial project, he had plans to

expand into other design projects.  This is apparent from the Brickstructures logo, which depicts

a skyline of several buildings (*i.e.*, the realm LEGO Architecture), a roller coaster, and a

suspension bridge.  Below is a design concept of the Brickstructures Logo, which (1) clearly

depicts a roller coaster[1]; and (2) shows that the design concept was copyrighted at least as early

as 2008 :



---

[1] *See also*, Exhibit F, which shows the Brickstructures logo shown above as where the rollercoaster idea came from.

16.     As shown in the Brickstructures logo, Mr. Tucker conceived of the idea of creating a brick-based roller coaster early on.

## Partnership with Coaster Dynamix, Inc.

17.     In 2009, after working on the LEGO Architecture series for a few years, Mr. Tucker decided it was time to pursue the design of a brick-based roller coaster.

18.     He first began the development of a brick-based roller coaster design by modifying a piece from an existing model roller coaster kit, sold by Coaster Dynamix, Inc., and attaching it to an existing LEGO® piece.  Upon discovering that the combination could work, he decided to reach out to Coaster Dynamix, Inc. to propose a possible partnership.

19.     In furtherance of this plan, while attending the 2009 International Hobby Expo (or "iHobby") in Chicago, he approached Jack Rimer of Coaster Dynamix, Inc. to present them with his idea for a brick-based roller coaster.

20.     Coaster Dynamix makes O (1:48) and HO (1:87) scales model roller coasters that require some glue for assembly, similar to Faller® scale products.

21.     On information and belief, before collaborating with Mr. Tucker, Coaster Dynamix had not produced or designed any roller coasters with tracks that are modular and adaptable that could be clipped to a brick-based system.

22.     After meeting at iHobby, Mr. Tucker (on behalf of Brickstructures, Inc.) and Coaster Dynamix began collaborating on the design of a brick-based roller coaster.

23.     At Brickworld 2010, Mr. Tucker presented the collaboration's first model brick-based roller coaster.  The model received positive attention from the attendees of Brickworld 2010.  The model was featured on YouTube and received over 500,000 views.  This emboldened the parties to move forward with working on their designs.

24.     Around this time, the parties began discussions with TLG in furtherance of their plans to develop a commercially-viable brick-based roller coaster.  In October of 2011, Coaster Dynamix and Brickstructures entered into a Memorandum of Understanding regarding this intent to move forward with the collaboration.  *See* Exhibit D, Memorandum of Understanding.

### The 2012 Agreement

25.      In or around 2012, the parties entered into a written Joint Venture Agreement (hereinafter "2012 Agreement"), attached hereto as Exhibit E.

26.     The 2012 Agreement memorialized the intent of the parties to enter into a joint venture to develop a commercially-viable brick-based roller coaster.

27.     Additionally, the 2012 Agreement provided that profits of the joint venture would be split 50-50.

28.     Specifically, the 2012 Agreement provides that "[t]he net profits earned by the joint venture, calculated at the end of each fiscal year, shall be divided among the parties as follows: CoasterDynamix [A.B.] shall receive 50 percent (50%) and Brickstructures [C.D] shall receive 50 percent (50%).  No other remuneration shall be received by the parties from the joint venture.  The net profits will be calculated by first deducting all operating expenses from gross income of the joint venture."

29.     In addition to the terms of the 2012 Agreement, the parties made representations by phone calls, text messages, and emails and had several mutual understandings regarding the responsibilities and rights of the parties under the joint venture and the 2012 Agreement.

30.     For example, it was the understanding of the parties that any seed monies paid by either Coaster Dynamix or Brickstructures would be repaid in full prior to the division and payment of any profits.

6

31.     Additionally, it was the understanding of the parties, and the binding promise of Coaster Dynamix, that Coaster Dynamix would seek patent protection for the design conceived by the joint venture.

32.     Brick Journal magazine published two articles in September 2013 (Issue No. 25), written by Joe Meno, which describe in detail the creation of Brickstructures to the conception and development of the brick-based rollercoaster systems, entitled "LEGO Coasters? Maybe….." and "Making Tracks!"  Copies of the articles are attached hereto as Exhibit F.

33.     The articles explain in detail the origin of the brick-based rollercoaster system which was borne out of Adam Reed Tucker of Brickstructures, who ultimately collaborated with Coaster Dynamix to combine the scale roller coasters of Coaster Dynamix with LEGO® systems, which even Coaster Dynamix believed was a "far-fetched" until working with Brickstructures.

**The Rollercoaster Factory**

34.     Brickstructures made the initial capital contributions to the joint venture, well in excess of $25,000.

35.     These capital contributions were necessary for the startup of the joint venture, and were used to pay for various necessities such as packaging and molds.

36.     In advance of Brickworld 2013, the joint venture began a small production run of version one of their brick-based roller coaster, called The Rollercoaster Factory.  One thousand (1000) kits were produced.

37.     One hundred (100) of these kits were offered for sale at Brickworld 2013.  Sixty four (64) kits were sold.  A representative from LEGO, Paal Smith-Meyer, took four (4) kits.  An additional five were misplaced or were otherwise unaccounted for.  Therefore, twenty-seven (27)

kits remained after Brickworld 2013.  Of these twenty-seven kits remaining, sixteen (16) kits were given to individual focus groups in exchange for providing constructive feedbacks for a Version 2.0 of the brick-based rollercoaster system, and eleven (11) kits were given away for promotional purposes.

38.     Each set sold for $100, therefore, $6400 in proceeds were obtained from Brickworld 2013.

39.     Nine hundred (900) additional kits were produced for sale.  These kits were made available for purchase online shortly after Brickworld 2013.

40.     On information and belief, all nine hundred (900) of these remaining kits were sold for $100 each.

41.     On information and belief, the proceeds from the sale of said 900 kits totaled $90,000.  Therefore, on information and belief, a total of 964 kits were sold for total proceeds of $96,400.  Brickstructures was paid only $6,400 from the total sale.

42.     Initially, Brickstructures received fairly regular payments from Coaster Dynamix. The following payments were made:

   a.   $2,500 on November 26, 2013;

   b.   $1,500 on December 13, 2013;

   c.   $1,000 on March 12, 2014;

   d.   $1,000 on April 30, 2014;

   e.   $1,500 on July 2, 2014;

   f.   $2,100 on August 21, 2014; and

   g.   $1,500 on October 28, 2014.

43.     Additionally, Brickstructures was paid the $6,400 obtained from Brickworld

2013.

44.    No additional payments were made to Brickstructures after October 28, 2014. Accordingly, Brickstructures has received a total of only $17,500 from Coaster Dynamix.

45.    Because the understanding of the parties was that capital contributions were to be repaid prior to the division of profits, these payments constitute a reimbursement of a portion of Brickstructures' capital contributions.

46.    In addition to the initial capital contributions, Brickstructures spent $2,400 of the $6,400 paid from Brickworld 2013 to compensate focus group members for their review of the kits.  The focus group was comprised of 16 individuals, and each member was paid $150 for his/her review of the kits. The kit was also given to each member as a complementary gift.

47.    In additional to monetary contributions, Mr. Tucker of Brickstructures has spent substantial time on this project, the value of which was never compensated.

48.    Therefore, Brickstructures is entitled to the return of the remainder of its capital contributions and other expenditures.

49.    Additionally, because the proceeds of the additional 900 kits sold are in excess of Brickstructures' capital contributions, Brickstructures is entitled to its 50% share of those remaining proceeds (*i.e.*, $45,000).

## The Cyclone Kickstarter Project

50.    The parties continued to work on the collaboration, communicating about future possible projects and exchanging ideas for a second version.  However, in or around June of 2016, communication from Coaster Dynamix became increasingly infrequent, despite efforts from Mr. Tucker to continue collaborating.

51.    On information and belief, and unbeknownst to Mr. Tucker at the time, this

9

silence was due to Coaster Dynamix working on its own side project. In particular, on September 5, 2016, Coaster Dynamix launched a Kickstarter campaign for a "The Cyclone-LEGO® Compatible Roller Coaster Construction Toy". *See* Exhibit G, printout from Kickstarter page, available at https://www.kickstarter.com/projects/nanocoasters/the-cyclone-lego-compatible-roller-coaster-constru/ (hereinafter referred to as "The Cyclone").

52. On information and belief, and as shown in Exhibit G, The Cyclone is brick-based roller coaster that is nearly identical to that designed by the collaboration between Coaster Dynamix and Brickstructures.

53. Coaster Dynamix neither informed Brickstructures of The Cyclone nor did it seek permission from Brickstructures to start a competing venture.

54. On information and belief, the project has been fully funded on Kickstarter and initially raised $131,985.

55. On information and belief, after the Kickstarter campaign ended, an additional campaign was continued on Indiegogo, where additional funds were raised.

56. On information and belief, and as of the filing of this complaint, a total of $139,995 has been raised by the Kickstarter and Indiegogo campaigns.

57. On information and belief, and as shown in Exhibit G, Coaster Dynamix advertises The Cyclone as being "the first commercially available kit that combines the versatility of the world's leading building block system with the realism and excitement of the CoasterDynamix track system."

58. On information and belief, Coaster Dynamix collaborated with Brick Journal writer Joe Meno to publish an article promoting The Cyclone and its related Kickstarter campaign.

59.     On information and belief, Joe Meno and Coaster Dynamix published an article entitled "CoasterDynamix Brick Rollercoaster Kit Kickstarter Launched!" on September 6, 2016, on www.brickjournal.com.  *See* Exhibit H, printout of article available at www.brickjournal.com/view/article/481.

60.     On information and belief, the www.brickjournal.com article states that The Cyclone is "[t]he first brick-based roller coaster of its kind."  *See id.*

61.     On information and belief, the www.brickjournal.com article further states that "[t]he team behind CoasterDynamix has created the first brick based, roller coaster construction toy of its kind, the Cyclone."  *See id.*

62.     On information and belief, the www.brickjournal.com article further states that "The Cyclone is the first commercially available brick compatible roller coaster construction toy on the market."

63.     On information and belief, in the www.brickjournal.com article, Jack Rimer of Coaster Dynamix is quoted as saying: "I remember being three or four years old, and I would be playing with my building blocks. I would build tunnels and I would build bridges. Anything that I saw in the real world I wanted to create with my blocks, and all my life, I've wanted to build a rollercoaster. Later in life, I knew people that could do some manufacturing, and I met my current business partner Mike [Graham] who had built some roller coaster models. Together, we created the miniature roller coaster system to be Lego compatible, and it was the first of its kind when we first introduced it."  *See id.* (alterations in original).

64.     On information and belief, Coaster Dynamix or its representative(s) participated in authoring the www.brickjournal.com article.

65.     On information and belief, Coaster Dynamix or its representative(s) approved the

contents of the www.brickjournal.com article.

## COUNT I
## BREACH OF CONTRACT

66.     Plaintiff incorporates by reference Paragraphs 1-65 above as if restated herein in their entirety.

67.     The 2012 Agreement between Brickstructures and Coaster Dynamix states that profits are to be split 50-50 between the parties.

68.     Therefore, Defendant has breached the 2012 Agreement between Brickstructures and Coaster Dynamix by failing to pay Brickstructures the fifty percent that it is due.

69.     Additionally, Defendant made a binding promise to Brickstructures to diligently seek patent protection for the design created by the joint venture.

70.     On information and belief, on or around June 27, 2013, Coaster Dynamix filed a provisional patent application with the United States Patent and Trademark Office.

71.     On information and belief, the application was assigned Serial No. 61/839,959.

72.     On information and belief, Coaster Dynamix did not convert the provisional patent application to non-provisional application, which would be examined and considered by the United States Patent and Trademark Office, prior to the expiration of the one year deadline.

73.     By failing to convert the provisional patent application to a non-provisional application prior to the deadline, Defendant breached its contractual obligation to Brickstructures.

74.     As a result, Brickstructures is now unable to seek patent protection for the utility concept and design.

75.     Additionally, Defendant made a promise to Brickstructures to return all seed money invested by Brickstructures into the joint venture prior to splitting profits.  This promise was committed to a mutual understanding and relied upon by Brickstructures.

76.     Defendant returned only a portion of Brickstructures' seed money.

77.     Defendant's actions constitute a breach of contract under Illinois law.

**COUNT II**
**BREACH OF FIDUCIARY DUTY**

78.     Plaintiff incorporates by reference Paragraphs 1-77 above as if restated herein in their entirety.

79.     At least by entering into the 2012 Agreement, Brickstructures and Coaster Dynamix entered into a joint venture.

80.     As a member of the joint venture, Coaster Dynamix owes a duty of care to the joint venture.

81.     As part of that joint venture, Coaster Dynamix was responsible for diligently pursuing patent protection for the utility concept and design.

82.     By failing to convert the provisional application to a non-provisional application which would be considered and examined by the United States Patent and Trademark Office prior to the one year deadline, Coaster Dynamix breached its duty of care to the joint venture and to Brickstructures.

83.     As a result, the joint venture and Brickstructures were irreparably harmed, because the deadline to convert a provisional application is a statutory bar and cannot be extended except in limited circumstances.  The joint venture and/or Brickstructures are therefore no longer able to seek patent protection for the utility concept and design disclosed in the provisional application.

84.     As a member of the joint venture, Coaster Dynamix also owes a duty of loyalty to the joint venture.

85.     On information and belief, Coaster Dynamix is offering for sale and/or promoting a brick-based roller coaster which is in direct competition with the joint venture, *i.e.* The Cyclone.

86.     The scope of the joint venture between Coaster Dynamix and Brickstructures encompasses all brick-based roller coaster utility concept and design.

87.     Until the joint venture is terminated or without the consent of the joint venture, members of the joint venture cannot compete directly with the joint venture.

88.     Accordingly, by promoting The Cyclone, Coaster Dynamix has breached and continues to breach its duty of loyalty to the joint venture and to Brickstructures.

89.     Additionally, Coaster Dynamix has breached its fiduciary duty to Brickstructures as a partner in the joint venture by failing to pay Brickstructures both its capital contributions and the fifty percent of proceeds due.

90.     Brickstructures has suffered damage as a direct and proximate result of Coaster Dynamix's breach of its fiduciary duties.

## COUNT III
## FALSE ADVERTISING UNDER THE LANHAM ACT
## (15 U.S.C. § 1125)

91.     Plaintiff incorporates by reference Paragraphs 1-90 above as if restated herein in their entirety.

92.     The statements made in Defendant's Kickstarter campaign are a use in interstate commerce.

93. The statements made in Defendant's Kickstarter campaign constitute commercial advertising or promotion.

94. The statements made in the www.brickjournal.com article are a use in interstate commerce.

95. The statements made in the www.brickjournal.com article constitute commercial advertising or promotion.

96. The statement made in Defendant's Kickstarter campaign that The Cyclone is "the first commercially available kit that combines the versatility of the world's leading building block system with the realism and excitement of the CoasterDynamix track system" constitutes a false or misleading representation of fact that misrepresents the nature of Coaster Dynamix's goods or commercial activities.

97. This statement is false or, at a minimum, misleading, because, on information and belief, the Rollercoaster Factory was the first commercially-available kit that combined the "world's leading building block system" (*i.e.* LEGO® bricks) with a Coaster Dynamix track system.

98. The statement made in the www.brickjournal.com article that The Cyclone is "[t]he first brick-based roller coaster of its kind" constitutes a false or misleading representation of fact that misrepresents the nature of Coaster Dynamix's goods or commercial activities.

99. This statement is false or, at a minimum, misleading, because, on information and belief, the Rollercoaster Factory was the first brick-based roller coaster.

100. The statement made in the www.brickjournal.com article that "[t]he team behind CoasterDynamix has created the first brick based, roller coaster construction toy of its kind, the Cyclone" constitutes a false or misleading representation of fact that misrepresents the nature of

15

Coaster Dynamix's goods or commercial activities.

101. This statement is false or, at a minimum, misleading, because, on information and belief, the Rollercoaster Factory was the first brick-based roller coaster.

102. The statement made in the www.brickjournal.com article that The Cyclone is "the first commercially available brick compatible roller coaster construction toy on the market" constitutes a false or misleading representation of fact that misrepresents the nature of Coaster Dynamix's goods or commercial activities.

103. This statement is false or, at a minimum, misleading, because, on information and belief, the Rollercoaster Factory was the first commercially available brick compatible roller coaster construction toy on the market.

104. Jack Rimer's statement that he and Mike Graham "created [a] miniature roller coaster system to be Lego compatible, and it was the first of its kind when we first introduced it" constitutes a false or misleading representation of fact that misrepresents the nature of Coaster Dynamix's goods or commercial activities.

105. This statement is false or, at a minimum, misleading, because, on information and belief, the Rollercoaster Factory was the first Lego-compatible miniature roller coaster system.

106. On information and belief, these statements are likely to deceive potential purchasers.

107. On information and belief, these statements are material to potential purchaser's decision of whether or not to purchase Defendant's product.

108. On information and belief, Plaintiff's goodwill has been harmed by Defendant's false and misleading statements.

109. On information and belief, the statements made in the Kickstarter campaign and

those made in the www.brickjournal.com article, including the quote from Jack Rimer, constitute false advertising and are a violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brickstructures, Inc. respectfully seeks the following relief against Defendant Coaster Dynamix, Inc.:

A.   Judgment that Defendant has breached the 2012 Agreement;

B.   Judgment that Defendant has breached its fiduciary duty to the joint venture between Brickstructures and Coaster Dynamix;

C.   Damages in an amount to be proven at trial, but in no event less than the following:
   a. A return of all capital contributions made by Brickstructures;
   b. The share of profits (50%) due to Brickstructures for the original Rollercoaster Factory Kits;
   c. Fifty percent of the profits gained from Coaster Dynamix promotion and sale of The Cyclone;
   d. Damages sufficient to compensate Brickstructures for the harm caused by Coaster Dynamix's failure to diligently seek patent protection;
   e. Damages sufficient to compensate Brickstructures for the harm caused by Coaster Dynamix's direct competition with the joint venture;
   f. Damages sufficient to compensate Brickstructures for the harm caused by Coaster Dynamix's false advertising;

D.   In addition to or in the alternative to the requested damages, Brickstructures requests an equitable accounting of monies owed to Brickstructures as a member of the joint venture between Brickstructures and Coaster Dynamix, including at least the following:
   a. The share of profits (50%) due to Brickstructures for the original Rollercoaster Factory Kits;
   b. Fifty percent of the profits gained from Coaster Dynamix promotion and sale of The Cyclone; and
   c. A return of all capital contributions made by Brickstructures.

E.   Pre-judgment and post-judgment interest, including costs incurred in this case;

F.   Any and all other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

DATED: November 30, 2016                    Respectfully submitted by,


                                            /s/Edward L. Bishop
                                            Edward L. Bishop
                                            ebishop@bdl-iplaw.com
                                            Nicholas S. Lee
                                            nlee@bdl-iplaw.com
                                            BISHOP DIEHL & LEE, LTD.
                                            1475 E. Woodfield Rd., Suite 800
                                            Schaumburg, IL 60173
                                            Phone (847) 969-9123
                                            Fax: (847) 969-9124

                                            *Attorneys for Plaintiff*
                                            *Brickstructures, Inc.*