IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRICKSTRUCTURES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COASTER DYNAMIX, INC., ) <br> ) <br> Defendant. ) | Case No. 16 CV 10969 <br><br> The Honorable Joan B. Gottschall |

**O R D E R**

Plaintiff Brickstructures, Inc. ("Brickstructures") has brought a three count complaint against defendant Coaster Dynamix, Inc. ("Coaster") alleging breach of contract (Count I), breach of fiduciary duty (Count II) and false advertising under the Lanham Act (15 U.S.C. §1125) (Count III). Before the court is defendant Coaster Dynamix, Inc.'s ("Coaster's") motion to dismiss [ECF No. 10] Count I on the ground that the purported contract was never formed due to lack of material terms, its motion to dismiss Count II on the ground that because there was no contract, there was no joint venture and hence no fiduciary duty; and its motion to dismiss Count III on grounds of lack of standing as well as Brickstructures' failure to allege reliance.

**Subject Matter Jurisdiction**

Before the court can reach the merits of this motion to dismiss, it must first assure itself that federal subject matter jurisdiction exists. *See, e.g.*, *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) ("[W]e are required to consider subject-matter jurisdiction as the first question in every case, and we must dismiss this suit if such jurisdiction is lacking." (quoting *Aljabri v. Holder*, 745 F.3d 816, 818 (7th Cir. 2014)) (brackets in original)); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). According to the complaint, jurisdiction is based upon

1

diversity of citizenship, 28 U.S.C §1332(a). (Compl. ¶5). However, while plaintiff Brickstructures asserts that it is a citizen of Illinois, it alleges the citizenship of defendant Coaster only "[o]n information and belief." In the Seventh Circuit, allegations of a party's citizenship based on information and belief are insufficient to establish diversity jurisdiction. *America's Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992); *see also Montgomery v. Scialla*, No. 15-cv-10840, 2017 WL 3720178, at *4 (N.D. Ill. Aug. 29, 2017) (ignoring complaint's jurisdictional allegations made on information and belief and stating that "Federal Rule of Civil Procedure 11 imposes a duty of reasonable precomplaint inquiry not satisfied by rumor or hunch." (citations omitted)).

The Seventh Circuit has made clear that although allegations of citizenship based on information and belief are insufficient, the court can look to other evidence in the record to see if the requirements of diversity have been satisfied. *See Med. Assurance Co., Inc. v. Hellman*, 610 F.3d 371, 376 (7th Cir. 2010). In an attempt to avoid prolonging the pendency of this motion unnecessarily, the court has reviewed the entire complaint, as well as its exhibits, to see if any adequate evidence of defendant's citizenship emerges. Regrettably, it has not found enough. Defendant admits in its Local Rule 3.2 notice of affiliates that it is incorporated in Virginia, but it does not mention its principal place of business. ECF No. 12 at 1. Corporate citizenship rests on two requirements: the state where the corporation is incorporated and the state where it has its principal place of business. 28 U.S.C. §1332(c)(1). Of this latter issue, the court has no knowledge and no way of acquiring knowledge. Nor is the fact that defendant has not objected to the complaint's allegations dispositive, first, since no answer has been filed and second, because it is not the defendant's job, but the court's, to make sure jurisdiction exists. "Even if the parties do not address the issue of subject-matter jurisdiction, 'we are bound to evaluate our

own jurisdiction, as well as the jurisdiction of the court below, *sua sponte* if necessary.'" *Buchel-Ruegsegger v. Buchel*, 576 F.3d 451, 453 (7th Cir. 2009) (quoting *Int'l Union of Operating Eng'rs, Local 150 v. Ward*, 563 F.3d 276, 282 (7th Cir. 2009)). "This duty arises because federal courts 'have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.'" *Id.* (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).

Because the current allegations of diversity jurisdiction are insufficient to provide this court with jurisdiction over this case, the court turns to Count III, False Advertising Under the Lanham Act (15 U.S.C. §1125). If this count adequately states a cause of action, the court can exercise federal question jurisdiction as to Count III and supplemental jurisdiction over Counts I and II. *See* 28 U.S.C. §§ 1331, 1367(a).

**Lanham Act Claim**

Summarizing the allegations of the complaint that pertain to Count III, Brickstructures is in the business of creating LEGO structures and dedicated to LEGO-related projects. Brickstructures' logo depicts a roller coaster, inasmuch as Brickstructures' founder, Adam Reed Tucker, conceived of the idea of a brick-based roller coaster many years ago. When he decided to pursue this idea, Mr. Tucker began by adapting a piece from a model roller coaster kit sold by Coaster, which uses glue and not LEGOs, and attaching the Coaster piece to a LEGO piece. When the idea worked, Mr. Tucker reached out to Coaster to propose a possible partnership. Coaster had never produced or designed roller coasters with modular tracks that could be clipped to a brick-based system.

The companies began collaborating and ultimately, in October of 2011, entered into a Memorandum of Understanding (Compl. Ex. D) to move forward with the collaboration. In

2012, they entered into a Joint Venture Agreement (Compl. Ex. E).[1] Brickstructures alleges that the parties agreed on a 50/50 split of profits and made representations not contained in the agreement (there is no incorporation clause). Brickstructures alleges that it was agreed that Coaster would seek patent protection for the design conceived by the joint venture.

Brickstructures made an initial capital contribution in excess of $25,000 to the joint venture and the joint venture began a small production run of a brick-based roller coaster, called The Rollercoaster Factory. One thousand kits were produced. One hundred were offered for sale at the Brickworld trade show in 2013, and 64 were sold. Each kit sold for $100, producing $6400 in proceeds. Subsequently, 900 kits were produced for sale online, and Brickstructures believes all were sold for $100 each. Brickstructures alleges that Coaster remitted far less than Brickstructures was due, not even considering monies spent by Brickstructures for focus groups and the expenditure of time.

The parties continued to work on the collaboration and discussed future projects and a subsequent version of the toy. In or around June 2016, Coaster stopped communicating. In September 2016, without informing Brickstructures or seeking its permission, Coaster launched a Kickstarter campaign for what it called its Cyclone-LEGO Compatible Roller Coaster Construction Toy, which Brickstructures believes is nearly identical to The Rollercoaster Factory. Brickstructures believes that The Cyclone project has been fully funded as a result of the Kickstarter campaign. A subsequent fundraising campaign was conducted on Indiegogo.

Brickstructures maintains that Coaster made a number of false claims in advertising The Cyclone: that The Cyclone was the first commercially available kit combining the leading block system with the Coaster Dynamix track system, that it was the first brick-based roller coaster of

---

[1] Whether the Joint Venture Agreement was an operative contract is a fact in dispute, but the dispute is ignored for present purposes.

its kind and the first commercially available brick compatible roller coaster construction toy, and that it was created by the Coaster Dynamix team.

Brickstructures' Lanham Act false advertising claim alleges that the allegedly false statements described above were made in interstate commerce and constitute commercial advertising or promotion, and that they misrepresent the nature of Coaster's goods or commercial activities. The statements are alleged to be false because "on information and belief" the Rollercoaster Factory was the first commercially available kit to combine the leading block system (LEGO) with a Coaster Dynamix track system. Moreover, says the complaint, these statements give full credit to Coaster Dynamix for developing the toy when the credit belongs to the joint venture.

Brickstructures then goes on to allege on information and belief that these statements are likely to deceive potential purchasers (Compl. ¶106), on information and belief are material to a purchaser's decision to purchase or not purchase defendant's product (*id.* ¶107); on information and belief have harmed plaintiff's goodwill (*id.* ¶108); and on information and belief constitute false advertising in violation of the Lanham Act (*id.* ¶109).

Defendant has moved to dismiss the Lanham Act claim on two grounds: that Brickstructures lacks standing because it was not a direct competitor of Coaster and that Brickstructures has not pled actual consumer reliance.

The direct competitor issue can be quickly disposed of, as it is without merit. The parties rely on cases from the Seventh Circuit which require that the parties be direct competitors. *See, e.g.*, *Emerging Material Tech., Inc. v. Rubicon Tech., Inc.*, No. 09 C 3903, 2009 WL 5064349, at *3 (N.D. Ill. Dec. 14, 2009) (cited by defendant at page 6 of its Motion to Dismiss). That is indeed what *Emerging Material Technologies* and many other cases in this circuit held, but the

5

Seventh Circuit rule was rejected by the Supreme Court in *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1392 (2014) ("the direct competitor test provides a bright-line rule; but it does so at the expense of distorting the statutory language"). *Lexmark* held that the Lanham Act reaches lost sales and damage to business reputation, suffered by a person engaged in commerce (not a consumer), whose injuries were proximately caused by the alleged misrepresentations. *Id.* at 1393. Diversion of sales by a direct competitor is not the only type of injury reached by §1125(a). Rather, "[w]hen a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements" whether or not the parties are direct competitors. *Id.* Further, as was the case in *Lexmark*, when a plaintiff alleges that the product it sold was of necessary use to direct competitors of the defendant, false advertising that reduces the business of the direct competitors also proximately damages the plaintiff. *Id.* Therefore, the Court held, "To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id.* at 1395. The direct competitor rule was rejected.

Accordingly, the motion to dismiss on the ground that, because the parties are not direct competitors, Brickstructures lacks standing is denied.

Coaster next argues that the complaint must be dismissed because Brickstructures has failed to allege consumer reliance. The court agrees with plaintiff to this extent: what must be pleaded (and proven) is that plaintiff suffered an injury to its sales or business reputation, *see Lexmark, supra* at 1395, something that certainly implies consumer reliance, as well as materiality. But it is the *injury* that must be pleaded and proven.

6

In this respect, and not because it fails to allege reliance in so many words, the court finds that the complaint is seriously deficient. Without getting into the complex question of whether Federal Rule of Civil Procedure 9(b)'s standard for pleading fraud applies here (the parties agree it does; the court does not need to reach the issue and is not so sure), plaintiff's allegations of injury, all stated on information and belief, are too conclusory and superficial to sustain this complaint. Specifically, while all that is required at this point is a short, plain statement of the claim, the short plain statement must overcome two hurdles. First, pursuant to Fed. R. Civ. P. 8(a)(2), the complaint's factual allegations must be sufficient to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint must contain sufficient allegations based on more than speculation to state a claim for relief that is plausible on its face. *Id*. This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679; *Marco Bicego S.P.A. v. Kantis*, No. 17-cv-00927-SI, 2017 WL 2651985, at *2 (N.D. Cal. June 20, 2017).

Plaintiff fails even to allege definitively that plaintiff's goodwill has been injured, the *sine qua non* of its Lanham Act claim; rather, it alleges that its goodwill has been harmed only

7

on information and belief. On merits issues, information and belief allegations are perfectly fine in appropriate circumstances, where the basis for the contention is not something properly within plaintiff's personal knowledge. But where something is alleged which should be within a plaintiff's personal knowledge, an information and belief allegation thrusts the complaint into the realm of speculation. *See Career Counseling, Inc. v. Amerifactors Fin. Grp., LLC*, No. 3:16-cv-03013-JMC, 2017 WL 4269458, at *5 (D.S.C. Sept. 26, 2017) ("Here, Career Counseling's use of 'upon information and belief' to describe events surrounding its receipt from Defendants of the allegedly unsolicited facsimile 'is an inadequate substitute for providing detail that should be squarely within Plaintiff's control.'" (quoting *Malibu Media, LLC v. Doe*, No. PWG-13-365, 2014WL 7188822, at *4 (D. Md. Dec. 16, 2014))). Whether plaintiff has sustained a reputational injury is not something outside the knowledge of plaintiff, that only discovery from the defendant can possibly uncover, but it is specifically about what has happened to plaintiff. If plaintiff has nothing on which it can base a clear and direct allegation that it has suffered an injury, this litigation is grounded on pure speculation, something that *Twombly*, *supra*, and *Iqbal*, *supra*, prohibit, based not on Rule 9(b) but on Rule 8. *See generally*, *Phoenix Entm't. Partners, LLC v. Orlando Beer Garden, Inc.*, No. 6:16-cv-80-Orl-31DAB, 2016 WL 1567590, at *5 (M.D. Fla. Mar. 30, 2016) ("allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard," citing *In re Superior Air Parts, Inc.*, 486 B.R. 728, 741 (Bankr. N.D. Tex. 2012)); *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 344 (E.D.N.Y. 2014) ("plaintiff's cursory reference to consumer surveys 'based upon information and belief' the average consumer 'would' associate the enumerated feature as coming from a single source is speculative and insufficient to support an inference of secondary meaning").

But the problem in the Lanham Act context is even more significant. Without an adequate allegation that it has sustained an injury within the reach of the Lanham Act, it is unclear that plaintiff has articulated an Article III case or controversy. To meet that requirement, plaintiff "must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark, supra* at 1386. That requirement is rooted in Article III's limitation of the judicial power of the United States to actual cases and controversies and is "the irreducible constitutional minimum of [Article III] standing." *Id. (*citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

There is no question that plaintiff's complaint alleges an injury: specifically, the injury caused by defendant's alleged failure to live up to the terms of the alleged joint venture, including paying plaintiff the money it was due. But that is not a Lanham Act injury. *See Lexmark,* 134 S. Ct. at 1390 ("a plaintiff must allege an injury to a commercial interest in reputation or sales."). *See generally Martin v. Wendy's Int'l, Inc.*, 183 F. Supp.3d 925, 932–33 (N.D. Ill. 2016) (citing cases and holding that plaintiff's allegations of Lanham Act standing were too speculative when he had only a preliminary prototype, not a merchantable model, and had not actually launched production).

Since plaintiff has not (as of this point) adequately alleged diversity jurisdiction, this court can retain this case only if it has jurisdiction based on the alleged violation of a federal statute, here the Lanham Act. There is no way that this case can go forward in this court unless plaintiff can allege a non-speculative Lanham Act injury, that is, an injury based on plaintiff's knowledge, not on a conclusory allegation of an injury based on information and belief.

## CONCLUSION

For the above stated reasons, Defendant's motion to dismiss [ECF No. 10] is granted. Plaintiff's complaint is dismissed. Plaintiff is invited to amend the complaint if it can do so by October 27, 2017.


Dated:  September 28, 2017                                  /s/
                                                  Joan B. Gottschall
                                                  United States District Judge